UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DENISE L. HARRISON,

                                    Plaintiff,

        -v-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

                                    Defendant.

---

No. 16-CV-7220 (KMK)

OPINION & ORDER

Appearances:

Gary James Gogerty, Esq.
Drake Loeb PLLC
New Windsor, NY
*Counsel for Plaintiff*

Kathryn Sara Pollack, Esq.
Social Security Administration
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Denise L. Harrison ("Plaintiff") brings this Action against the Acting Commissioner of

Social Security (the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision

of an administrative law judge (the "ALJ") to deny Plaintiff's application for disability insurance

benefits on the ground that Plaintiff was not disabled within the meaning of the Social Security

Act, 42 U.S.C. § 423 *et seq.*  The Court referred the case to Magistrate Judge Paul E. Davison

("Judge Davison"), pursuant to 28 U.S.C. § 636(b)(1)(A).  (Dkt. No. 6.)  The Commissioner and

---

        [1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Nancy A. Berryhill, the current
Acting Commissioner of Social Security, has been substituted as the Defendant in this Action.

Plaintiff cross-moved for judgment on the pleadings.  (Dkt. Nos. 10, 14.)  On March 1, 2018,

Judge Davison issued a Report and Recommendation ("R&R") recommending that the Court

deny the Commissioner's motion and grant Plaintiff's cross-motion.  (R&R 39 (Dkt. No. 18).)

The Commissioner filed objections to the R&R on March 15, 2018.  (*See* Comm'r's Obj. to

R&R ("Comm'r's Obj.") (Dkt. No. 19).)  Plaintiff filed a response on March 23, 2018.  (Pl.'s

Resp. to Comm'r's Obj. ("Pl.'s Resp.") (Dkt. No. 20).)

For the reasons discussed below, the Court grants the Commissioner's Motion for

Judgment on the Pleadings and denies Plaintiff's Cross-Motion for Judgment on the Pleadings.

Accordingly, the decision of the ALJ is affirmed.[2]

## I.  Discussion

### A.  Standard of Review

#### 1.  Review of a Report and Recommendation ("R&R")

A district court reviewing an R&R addressing a dispositive motion "may accept, reject, or

modify, in whole or in part, the findings and recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1).  Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2),

parties may submit objections to the R&R.  The objections must be "specific" and "written," and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."

Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to an R&R, the district court reviews de novo the

portions of the report and recommendation to which the party objected.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . .

---

[2] On April 7, 2015, the ALJ issued a decision denying Plaintiff's claim.  (Admin. Rec. ("A.R.") 16–34 (Dkt. No. 9).)  On July 29, 2016, Plaintiff's request for review was denied, (A.R. 1–6), thus rendering the ALJ's decision the final decision of the Commissioner.

[R&R] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). Moreover, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the magistrate's recommendations." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and italics omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (same).

## 2.  Review of a Social Security Claim

In reviewing an ALJ's determination, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to Social Security benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine de novo whether [the] plaintiff is disabled." (italics, alteration, and quotation marks omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted), *amended on reh'g in part by* 416 F.3d 101 (2d Cir. 2005). Accordingly, a court may overturn an ALJ's determination only if it was "based upon legal error" or "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation and quotation marks omitted).

"'Substantial evidence' is 'more than a mere scintilla,'" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971)).  In considering whether substantial evidence supports the ALJ's determination, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation and quotation marks omitted).  Where the ALJ's factual finding is supported by substantial evidence, that finding "shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, "once an ALJ finds facts," the court may "reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation marks omitted).  In other words, "[i]f evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof on the first four steps, while the [Commissioner] bears the burden on the last step." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citation omitted). At the last step, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002) (citation omitted). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre*, 758 F.3d at 151, the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

B. Analysis

The Court assumes the Parties' familiarity with the facts and will repeat only those facts relevant to the consideration of the objections to the R&R raised by the Commissioner.

There is no dispute as to the first three steps of the sequential analysis. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 2011. (A.R. 21.) At step two, the ALJ determined that Plaintiff's "hypertension, morbid obesity, lumbar spinal spondylosis and stenosis with small disc herniation, status post cervical spinal fusion, radiculopathy[,] and chronic pain syndrome" constituted "severe impairments," while Plaintiff's thyroid disease, reflux, and depressive disorder did not. (*Id.* at 21–22.) At step three, the ALJ determined that Plaintiff's impairments, whether considered individually or together, did not "meet[] or medically equal[] the severity of one of the listed impairments" in the regulations. (*Id.* at 22.)[3]

_____

[3] In particular, the ALJ determined that Plaintiff's "back impairment" did not not qualify because "[t]he medical record does not demonstrate compromise of a nerve root . . . or the spinal cord with additional findings of evidence of nerve root compression characterized by neuro-

At step four, the ALJ determined that Plaintiff had the residual functional capacity "to perform sedentary work," (*id.* at 23), and therefore did not sustain her burden of proving that she could not perform her past relevant work as an administrative assistant and manager of administrative services, (*id.* at 29–30).

In the R&R, Judge Davison concluded that the ALJ erred at step four by (1) discounting Plaintiff's credibility regarding her subjective statements about her pain; and (2) failing to give the opinion of Plaintiff's treating physician controlling weight. (*See* R&R 30–39.) The Commissioner objects to each conclusion. (*See generally* Comm'r's Obj.) The Court addresses each issue separately.

### 1. Plaintiff's Subjective Statements

#### a. Applicable Law

"Evidence of pain is an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating" whether, at step four of the sequential analysis, a claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. *Meadors v. Astrue*, 370 F. App'x 179 (2d Cir. 2010) (citation omitted).[4] In calculating RFC, "the ALJ is required to take the claimant's report of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other

---

anatomic distribution of pain, limitation of motion of the spine, and motor loss . . . accompanied by sensory or reflex loss." (A.R. 22.)

[4] "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by [her] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111

F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a

claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light

of medical findings and other evidence, regarding the true extent of the pain alleged by the

claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

To evaluate a claimant's credibility, the ALJ must follow a two-step process. First, "the

ALJ must decide whether the claimant suffers from a medically determinable impairment that

could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49

(citation omitted). Second, "the ALJ must consider the extent to which the claimant's symptoms

can reasonably be accepted as consistent with the objective medical evidence and other evidence

of record." *Id.* (citation, alterations, and quotation marks omitted). In so doing, the ALJ must

"consider all of the available medical evidence, including a claimant's statements, treating

physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-

3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F.

App'x 367, 370–71 (2d Cir. 2012)). Where the other medical evidence is not consistent with the

claimant's subjective statements, the ALJ must consider seven additional factors:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and
> intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage,
> effectiveness, and side effects of any medications taken to alleviate the pain; (5) any
> treatment, other than medication, that the claimant has received; (6) any other
> measures that the claimant employs to relieve the pain; and (7) other factors
> concerning the claimant's functional limitations and restrictions as a result of the
> pain.

*Id.* at *12 & n.21 (quoting 20 C.F.R. § 404.1529(c)(3)).

Should the ALJ decide to reject or discount a claimant's testimony on credibility grounds,

the ALJ must "explain the decision . . . with sufficient specificity to enable the reviewing Court

to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence." *Kuchenmeister v. Berryhill*, No. 16-CV-7975, 2018 WL 526547, at *12 (S.D.N.Y. Jan. 19, 2018) (citation, quotation marks, and alterations omitted); *see also Lugo v. Apfel*, 20 F. Supp. 2d 662, 664 (S.D.N.Y. 1998) ("Conclusory determinations [by an ALJ] . . . leave a reviewing court no basis on which to determine whether the proper factors were considered and the appropriate legal standards applied.").

### b. ALJ's Decision

The ALJ's step-four analysis began by reviewing Plaintiff's medical history between 2011 and 2014, including both Plaintiff's subjective statements and the objective medical evidence, in detail. (*See* A.R. 23–28.) Having done so, the ALJ determined that, "[a]fter careful consideration of the evidence," (*id.* at 28), Plaintiff's subjective statements as to the severity of her pain and consequent complete inability to work, (*see id.* at 176, 178–84, 283), were "not entirely credible," (*id.* at 28). The ALJ offered five specific reasons for this credibility finding.

First, Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*) Plaintiff indicated to Dr. Booker in October 2011 that her "pain did not interfere with her activities of daily living" and indicated in late 2014 that "she started to exercise after her [June 2014] cervical spinal fusion surgery." (*Id.* at 28, 292, 624.) Second, because Plaintiff's surgery achieved its "intended results" and Plaintiff's occasional injections and pain medication provided "good pain relief," there was no indication that "those modalities would not prevent [Plaintiff] from engaging in sedentary work. (*Id.* at 28, 285–313, 636–94.) Further, Plaintiff was not prescribed "any opiates for pain because she had tested positive for marijuana use." (*Id.* at 28, 650, 653.) Third, Plaintiff testified that she, rather than Dr. Yeon, typed up the written opinion describing Plaintiff as

disabled. (*Id.* at 28, 80–85, 236–40.) Further, despite the ALJ attempting at least twice to reach

out to Dr. Yeon for clarification and further detail on his opinion, he "failed to respond." (*Id.* at

28, 233–35.) Fourth, Plaintiff's "strong work history" — a factor that ordinarily weighs in favor

of credibility — was "outweighed by substantial medical evidence . . . which [did] not support

complete disability." (*Id.* at 28.) Fifth, and perhaps most importantly, Plaintiff "testified that she

received unemployment compensation when she left work," which meant Plaintiff certified that

she was "'able' to work," was required to "continue to look for work as a condition of collecting

unemployment," and indeed testified that she was looking for sedentary work. (*Id.* at 29, 44–48.)

As the ALJ put it, "[a]dvising one governmental agency . . . that one is 'able' to work while

advising another governmental agency . . . that one is 'unable' to work is facially inconsistent."

(*Id.* at 29.)

c. Analysis

The ALJ's credibility determination is neither "based upon legal error" nor unsupported

by "substantial evidence." *Rosa*, 168 F.3d at 77. The R&R, in concluding to the contrary,

articulated six criticisms of the ALJ's analysis.[5] None of the criticisms can survive the

deferential standard of review.

First, the R&R stated that "the ALJ failed to question [P]laintiff about her efforts" at

exercising to lose weight and that "there is no evidence in the record about the type, duration,

frequency[,] and intensity of [P]laintiff's exercise." (R&R 33.) This assertion, however, is

---

[5] As a preliminary note, the R&R stated that the ALJ did "not substantiate the . . .
decision to reject [P]laintiff's statements." (R&R 33.) The ALJ did not, however, "reject" the
entirety of Plaintiff's subject statements. Rather, she discounted them, concluding that they were
"not entirely credible" and "not wholly credible." (A.R. 28.) Indeed, the ALJ explicitly stated
that she considered Plaintiff's subjective statements "to the extent they are deemed credible."
(*Id.* at 29.)

incorrect. The ALJ did question Plaintiff about her weight and exercise, and Plaintiff's testimony addressed duration, frequency, and intensity. (*See* A.R. 56–58.)[6]

Second, the R&R found that the ALJ's reliance on Plaintiff's October 2011 statement to her physician that her back pain had not interfered with her activities of daily life was improper because "a claimant need not be an invalid to be found disabled under the Social Security Act," and when a claimant "gamely chooses to endure pain in order to pursue important goals, such as basic daily activities, it would be a shame to hold this endurance against her in determining benefits unless her conduct truly showed that she is capable of working." (R&R 33 (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); and then quoting *Eli v. Berryhill*, No. 16-CV-6683, 2017 WL 3610510, at *12 (S.D.N.Y. Aug. 21, 2017); *see also* A.R. 292 (Dr. Booker's treating notes)).) Yet, Plaintiff's statement is a relevant consideration under the regulations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), (4); *see also Alejandro v. Comm'r of Soc. Sec.*, No. 17-CV-2906, 2018 WL 4328839, at *4 (S.D.N.Y. Sept. 11, 2018) ("ALJs are instructed to compare a claimant's daily activities to her allegations in order to assess their credibility." (citing 20 C.F.R. § 404.1529(c)(3)(i))). Accordingly, the ALJ did not err by considering Plaintiff's October 2011 statement to her physician alongside the other evidence in the record.

Third and fourth, the R&R stated that although Plaintiff's surgery, injections, and medication were successful and provided some pain relief, they did not provide complete, long-term relief, and indeed Plaintiff was subsequently diagnosed with lumbar radiculopathy and

---

[6] Further, to the extent the R&R's criticism is that Plaintiff's testimony on weight and exercise was not sufficiently detailed, the R&R fails to explain the upshot of that shortcoming, that is, how it undermined the ALJ's *credibility* determination. (Evidence of Plaintiff's exercise is, of course, relevant to the broader step-four question of Plaintiff's RFC. Yet that cannot have been the R&R's criticism, for it is Plaintiff's burden, not the ALJ's, to provide that evidence. *See Green-Younger*, 335 F.3d at 106.)

required pain management.  (R&R 33–34.)  That is correct, but does not call into question the ALJ's credibility determination, for the ALJ acknowledged as much.  (*See* A.R. 28.)  As required by 20 C.F.R. § 404.1529(c)(3)(iv)–(v), the ALJ considered "the type, dosage, effectiveness, and side effects of any medication and injections that [Plaintiff] takes or has taken to alleviate pain or other symptoms," and concluded that "those modalities" — that is, Plaintiff's medications and their side effects — "would not prevent [Plaintiff] from engaging in" sedentary work.  (A.R. 28; *see also id.* at 302, 489, 498, 645–46, 650.)

Fifth, the R&R interpreted the ALJ's statement that Plaintiff "had tested positive for marijuana use," (*id.* at 28), to be "misleading" because it "impl[ied] that [P]laintiff had concealed that information from" her physician, when in fact she did not, (R&R 34).  The ALJ's opinion, however, does not bear out this interpretation.  Just one page prior to the statement in question, the ALJ stated that Plaintiff "admitted to marijuana use," (A.R. 27); it is thus hard to see how the ALJ believed, or implied, that Plaintiff had concealed marijuana use.  Indeed, a plain reading of the statement in question does not suggest that marijuana use bore on Plaintiff's credibility; rather, because the statement appears in a paragraph on Plaintiff's medication and pain management, it is far more natural to read it as relevant to just that.[7]  Further, even if the ALJ *were* implying Plaintiff concealed her marijuana use, the R&R's one-sentence criticism fails to explain the connection between the ALJ's statement and the credibility determination.

Sixth and finally, the R&R found that the ALJ "overstate[d]" the "level of [P]laintiff's involvement in the preparation of Dr. Yeon's assessment."  (R&R 34.)  It is not clear, however, that this is correct.  The ALJ stated that Plaintiff "testified that she filled out the [RFC] form for

---

[7] Dr. Husain's medical record states: "Patient states she is taking THC, I told her I would not be able to prescribe any nar[cotic] medication."  (A.R. 650.)  It further states: "[W]ill hold off on narcotic medication as patient is using THC.  Will treat non-narcotically."  (*Id.* at 653.)

Dr. Yeon, who then signed it," and that "[i]t appears Dr. Yeon heavily relied upon [Plaintiff's] subjective complaints — allowing her to complete the [RFC] form instead of providing his own assessment, while ignoring his benign objective treatment findings detailed in his treating notes." (A.R. 27–28.) The ALJ then reiterated that Plaintiff "testified that she is the person who typed up the form and went over with Dr. Yeon." (*Id.* at 28.) This seems to be a fair representation of Plaintiff's testimony. (*See id.* at 80–83.) And, as the ALJ noted, it bears directly on the credibility of both Plaintiff and Dr. Yeon's opinion, (*see id.* at 28), particularly given that Dr. Yeon did not respond to the ALJ's request to provide other information, (*see id.* at 28, 233–35).

In sum, there is no sound reason for faulting the ALJ's credibility determination. Under the substantial evidence standard of review, remand is appropriate only where no reasonable factfinder could have weighed the evidence as the ALJ did. *See McIntyre*, 758 F.3d at 149. That standard is not met here. The R&R articulates disagreements with the ALJ's weighing of *some* of the evidence.[8] Some of the R&R's criticisms are belied by the record. To the extent some criticisms are fairly put, it nevertheless cannot be said that the ALJ's weighing of the evidence going to credibility was irrational or unreasonable. Where, as here, "evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre*, 758 F.3d at 149. It is "the function of the [ALJ], not the reviewing court[], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't Health & Human Servs.*, 728 F.2d 588, 501 (2d Cir. 1984) (citation, quotation marks, and alteration omitted). Further, "[d]eference should be accorded the ALJ's determination because [she] heard [the] plaintiff's testimony and observed [her] demeanor." *Gernavage v. Shalala*, 882

---

[8] For example, the R&R, notably, does not contest the significant inconsistencies identified in Plaintiff's testimony regarding her receipt of unemployment benefits. (A.R. 29.)

F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) (citations omitted); *see also Marquez v. Colvin*, No. 12-CV-6819, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (noting that reviewing courts "must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe [the] plaintiff's demeanor while testifying" (citing *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994))).  Here, the ALJ identified several "specific record-based reasons" for finding Plaintiff's subjective statements to be only partially credible.  *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010); *see also Kuchenmeister*, 2018 WL 526547, at *12 ("When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." (citation and quotation marks omitted)).  Accordingly, there is no basis upon which to second-guess the ALJ's credibility determination.  *See, e.g.*, *Alejandro*, 2018 WL 4328839, at *4 (upholding credibility determination where "the ALJ offered reasons why he discounted certain evidence that could have substantiated [the plaintiff's] claims" and "determined that [the plaintiff's] own statements about her daily conduct were inconsistent with her allegations of disability"); *see also Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (upholding ALJ's finding that the plaintiff had "diminished credibility" in light of his "range of activities," "conservative course of . . . treatment," "employment in physical labor in close temporal proximity to the dates of claimed disability," and "representation of readiness and ability to work in connection with his receipt of unemployment benefits").

### 2.  The Treating Physician Rule

#### a.  Applicable Law

The Social Security Administration "recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant."  *Greek v. Colvin*, 802 F.3d

370, 375 (2d Cir. 2015). Under this rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Consequently, an ALJ reviewing a claim for disability benefits must likewise generally give "deference to the medical opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). However, "the opinion of the treating physician is *not* afforded controlling weight where" the opinion is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Id.* (emphasis added) (citation omitted); *see also Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (same); *Illenberg v. Colvin*, No. 13-CV-9016, 2014 WL 6969550, at *20 (S.D.N.Y. Dec. 9, 2014) ("When a treating physician's opinion is internally inconsistent or inconsistent with other substantial evidence in the record, the ALJ may give the treating physician's opinion less weight." (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999))).

If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider a number of factors in determining how much weight the opinion is due, including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of the opinion; the opinion's consistency with the record as a whole; whether the opinion was from a specialist; and any other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ need not recite each factor. *See Halloran*, 362 F.3d at 32 (concluding that "the substance of the treating physician rule was not traversed" even though it was "unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule"); *see also*

*Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." (citation omitted)).

### b. Analysis

The ALJ declined to accord Dr. Yeon's opinion controlling weight and instead accorded it "[l]imited weight." (A.R. 27.) The R&R first faults the ALJ's determination on several minor grounds, including that the ALJ's characterization of Dr. Yeon's treating notes does not comport with Plaintiff's "primary complaint" of "extreme, chronic low back pain"; that the ALJ's "rejection of [Plaintiff's] limitations" was "conclusory"; and that the ALJ "omitted any mention of [P]laintiff's positive straight-leg raising tests." (R&R 36–37.)[9]

None of these criticisms is valid. The ALJ describes Plaintiff's medical history with Dr. Yeon in detail:

> In April 2014, [Plaintiff] was seen by Dr. Howard Yeon for ongoing complaints of back pain, which she described as gnawing, sharp, shooting, splitting, throbbing[,] and stabbing, exacerbated by movement, and unrelieved by anything. However, [Plaintiff] retained full strength, a normal gait, had palpable pulses, and her straight leg raise testing was negative. She had an MRI on April 8, 2014 which showed C5-C6 degenerative disc disease and spondylosis resulting in moderate central canal stenosis without cord compression. [Plaintiff's] full strength, normal gait, intact sensation[,] and negative straight leg raise test results were re-confirmed on April 24, 2014. . . . On May 27, 2014 [Plaintiff] was seen again by Dr. Yeon. She explained that she had aching neck pain that radiated into her arm for the last year, and though the radiology shows a cervical impairment, this is the first time a complaint of this nature appears in the records. [Plaintiff] had mild tenderness to palpitation over her paraspinal muscles, trapezii, and periscapular and occipital muscles. Sensation was intact to light touch, and [Plaintiff] had full strength throughout her upper extremities. Dr. Yeon prescribed Flexeril and recommended surgery, to which [Plaintiff] consented. Dr. Yeon performed a C5-6 anterior cervical decompressive discectomy and fusion on June 11, 2014. At [Plaintiff's] first post-operative visit two weeks later, she had only mild posterior neck pain and stiffness,

---

[9] The R&R also found that the ALJ "overstate[d]" the "level of [P]laintiff's involvement in the preparation of Dr. Yeon's assessment." (R&R 37.) As noted, however, the record does not compel that finding. *See supra* Section I.B.1.c.

and mild incisional pain.  Provocative testing was negative, and she had normal reflexes and full strength in her extremities.  Dr. Yeon wrote that [Plaintiff] was 'doing well.'  At an office visit six weeks after surgery [Plaintiff] was note[d] as 'doing very well.'  As of August 5, 2014, [Plaintiff] denied any neck pain, though she still had lower back pain that was worse with walking.  Her physical exam was again benign, with mild tenderness over the paraspinal muscles and positive straight leg raise testing, but a normal, well balanced gait, normal range of motion, normal reflexes, intact sensation[,] and full strength.  [Plaintiff] was diagnosed with lumbar radiculopathy and referred for pain injections. . . .  In November 2014 [Plaintiff] returned to Dr. Yeon, where she reported pain of only 2/10 intensity in her neck.  She had one to two weeks of relief from the epidural injection.  Her physical examination was unchanged since the prior visit, with unimpeded range of motion full strength[,] and normal reflexes.  A new lumbar MRI was done on November 12, 2014 and showed only mild bilateral neural foraminal stenosis at L4-5, and congenital stenosis of the lumbar central canal.  [Plaintiff's] final visit to Dr. Yeon on November 25[,] 2014 was notable for negative straight leg raise testing and her typically benign clinical presentation.  Dr. Yeon felt that [Plaintiff's] stenosis was not significant enough to warrant surgery, but encouraged her to continue with a home exercise program, and have additional pain injections.

(A.R. 26–27 (citations omitted throughout).)  This recitation of events shows that the ALJ took explicit account of Plaintiff's complaints of back pain; that the ALJ's detailed analysis was based on a close review of the treating notes for each of Plaintiff's visits to Dr. Yeon; and that the ALJ did in fact note Plaintiff's positive straight leg raise test result in June 2014 (in addition to noting Plaintiff's three negative test results).

More fundamentally, the R&R contends that the ALJ improperly discounted Dr. Yeon's opinion and, as a result, improperly gave "great weight" to Dr. Woods' opinion, "even though Dr. Woods performed only one consultative examination . . . seven months *before* [P]laintiff was first seen by Dr. Yeon, ten months *before* her cervical discectomy and fusion (performed by Dr. Yeon)[,] and fifteen months *before* the November 2014 MRI which showed an L4-L5 disc bulge and stenosis."  (R&R 38 (emphases in original).)

An ALJ acts reasonably, however, in discounting a treating physician's opinion based on a finding that the opinion was inconsistent with the physician's own treatment notes.  *See, e.g.*,

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (affirming ALJ's decision to not give controlling weight to treating physician's opinion because it "contained internal inconsistencies" and "substantial evidence contradict[ed]" it ); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (affirming ALJ's decision not to give controlling weight to treating physician's opinion where the physician's treating notes "directly contradict[ed] [his]" opinion). That is precisely what occurred here. As the ALJ explained, Dr. Yeon's opinion stated that Plaintiff "needs a cane to walk, must elevate her legs, and requires frequent, lengthy breaks." (A.R. 27; *see also id.* 236–40 (Dr. Yeon's opinion).) Yet, Dr. Yeon's treating notes "consistently and unfailingly noted" that Plaintiff, though in some degree of pain, had "full strength, intact reflexes, normal gait[,] and no loss of sensation." (A.R. 27; *see also id.* at 488–89, 505–06, 522–23, 529, 537, 635, 638–39, 645–46 (Dr. Yeon's treating notes).) Indeed, Dr. Yeon's "clinical observations and physical examinations . . . routinely found [Plaintiff] with good range of motion of the cervical spine, sensation, [and] strength[,] and reflexes were generally all found to be intact," albeit with "mild tenderness." (*Id.* at 28.) Moreover, although Dr. Yeon's opinion reported that Plaintiff had certain mental health-related limitations, his treating notes did not indicate that Plaintiff "ma[de] any mental health complaints to" him, and therefore, the ALJ correctly explained, he was "not competent to opine on her functionality in this area." (*Id.* at 27; *see also id.* at 236–40 (Dr. Yeon's opinion).) Accordingly, the ALJ reasonably concluded that Dr. Yeon's opinion described "extreme limitations which [were] not supported by his record" and which were "wildly at odds with the picture he painted" of Plaintiff in his treating notes, (*id.* at 27), particularly given that his opinion failed to explain the apparent inconsistencies.

Indeed, these were not the only problems identified by the ALJ. Plaintiff "testified that she" — rather than Dr. Yeon — "filled out the [RFC] form for Dr. Yeon, who then signed it."

(*Id.*; *see also id.* at 80–83 (Plaintiff's testimony).)  That is, "Dr. Yeon heavily relied upon [Plaintiff's] subjective complaints — allowing her to complete the [RFC] form instead of providing his own assessment, while ignoring his benign objective treatment findings detailed in his treating notes."  (*Id.* at 27–28.)  The ALJ's consideration of this authorship problem was proper.  *See Rivas v. Berryhill*, No. 17-CV-5143, 2018 WL 4666076, at *11 (S.D.N.Y. Sept. 27, 2018) ("The ALJ was entitled to afford less weight to [the treating physician's] assessments . . . because these assessments appeared to be solely based on Plaintiff's self-reported symptoms." (citation omitted)); *see also Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580, 581 (2d Cir. 2016) (affirming ALJ's decision to afford treating physician's opinion less weight where it was internally inconsistent, relied primarily on the plaintiff's self-reported symptoms, and was not supported by the medical evidence); *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (affirming ALJ's decision that treating physician's opinion was not entitled to controlling weight in part because it "was no more than a doctor's recording of [the plaintiff's] own reports of pain").  "This is particularly true where, as in this case, the ALJ has appropriately found that [Plaintiff] is not [wholly] credible." *Jones v. Comm'r of Soc. Sec.*, No. 17-CV-6396, 2018 WL 3829119, at *6 (W.D.N.Y. Aug. 13, 2018) (citation omitted); *see also Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's determination not to afford treating physician's opinion controlling weight where it was largely based on the subjective statements of the plaintiff, who had been found not fully credible); *Harris v. Astrue*, No. 10-CV-6837, 2012 WL 995269, at *3 (S.D.N.Y. Mar. 26, 2012) (affirming ALJ's determination to discount treating physician's opinion where it was "based primarily on [the] [p]laintiff's unreliable self-reported symptoms and . . . directly contradicted other evidence in the record").

"In light of the internal inconsistencies identified" in Dr. Yeon's opinion, the ALJ "had an 'affirmative duty' to seek out additional information, either by recontacting the treating physician or by obtaining an independent medical expert's opinion." *Levine v. Berryhill*, No. 17-CV-5024, 2018 WL 4204432, at *9 (S.D.N.Y. Sept. 4, 2018) (report and recommendation) (quoting *Hynes v. Astrue*, No. 12-CV-719, 2013 WL 3244825, at *11 (E.D.N.Y. June 26, 2013)). That is exactly what happened here. The ALJ "twice asked" Dr. Yeon "to clarify the bases of his [written] opinion," but "he failed to do so." (A.R. 28; *see also id.* at 233–42 (letters from ALJ to Dr. Yeon).)

In addition, the ALJ determined that other substantial evidence in the record ran contrary to Dr. Yeon's opinion. The R&R does not challenge the bulk of this evidence, which details Plaintiff's complete medical history and the notes and opinions of multiple other physicians. The R&R maintains, more narrowly, that the ALJ failed to provide a justification for concluding that "great weight" be awarded to the medical opinion of Dr. Woods. (R&R 38.) Yet, the ALJ clearly provided just such a justification:

> Dr. Woods opined that [Plaintiff] has moderate limitation for bending, kneeling, lifting, carrying heavy objects[,] and prolonged standing, an opinion to which I accord great weight because it is supported by the objective examination finding of painful range of motion, but still accounts for [Plaintiff's] full strength and lack of neurological deficits. Overall, the assessment and opinion[,] though not a specific function by function assessment of basic work activity[,] does provide a framework which supports the residual functional capacity when considered in combination with [Plaintiff's] activities of daily living and also her search for sedentary work.

(A.R. 25–26; *see also id.* at 474–77 (Dr. Woods' opinion).) The Court is mindful that the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419 (citation omitted). Here, however, the ALJ provided "good reasons" for both crediting Dr. Woods' opinion and not crediting Dr. Yeon's opinion. *Cf. id.* (noting that failure to provide "good reasons" for not

crediting the treating physician's diagnosis "by itself warrants remand" (citation omitted)). As

noted, the ALJ found that, in contrast with the internal inconsistencies and authorship problems

that plagued Dr. Yeon's opinion, Dr. Woods' opinion was consistent and, critically, supported by

other substantial evidence in the record, including Plaintiff's own testimony and the objective

evidence from other physicians.[10] "It is well-settled that a consulting physician's opinion can

constitute substantial evidence supporting an ALJ's conclusions." *Rivera v. Colvin*, No. 15-CV-

3587, 2015 WL 9591539, at *16 (S.D.N.Y. Dec. 18, 2015) (report and recommendation)

(collecting cases). Thus, because it is clear that the ALJ reviewed the entire medical record,

attempted to "reconcile the contradiction[s]" in Dr. Yeon's opinion, "grapple[d] with" Dr. Yeon's

findings, and provided "good reasons" for his comparative weighing of the opinions of Dr. Yeon

and Dr. Woods, the ALJ did not violate the treating physician rule. *Selian*, 708 F.3d at 419

(citation and quotation marks omitted). The treating physician rule requires only that the ALJ

consider the opinion of Dr. Yeon in the context of the "other substantial evidence in the record,

such as the opinions of medical experts." *Halloran*, 362 F.3d at 32. When the record contains

"conflicting . . . evaluations of [a claimant's] present condition, it [is] within the province of the

ALJ to resolve that evidence." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The ALJ

sufficiently explained why he declined to afford controlling weight to Dr. Yeon's opinion. In so

doing, the ALJ resolved the conflicting evidence and thus acted well within his discretion. *See*

*Halloran*, 362 F.3d at 32 (holding that "the opinion of the treating physician is not afforded

---

[10] To take one example not challenged by the R&R, Dr. Booker — who treated Plaintiff in October 2011 and to whose opinion the ALJ accorded "[s]ignificant weight" in light of his "extensive knowledge of [Plaintiff's] condition at the time" — found that Plaintiff's only significant work-related restriction was that she refrain from prolonged standing, a finding which conflicts with the much more restrictive limitations outlined in Dr. Yeon's opinion. (A.R. 24; *see also id.* at 292–94 (Dr. Booker treating notes).)

controlling weight where" it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts" (citation omitted)); *see also Pirog v. Colvin*, No. 15-CV-438, 2016 WL 5476006, at *5 (S.D.N.Y. Sept. 28, 2016) ("[T]here was substantial objective evidence in the record undermining [the treating physician's] opinion" and therefore the ALJ "committed no error in choosing to assign little weight to [it]."); *Sabater v. Colvin*, No. 12-CV-4594, 2016 WL 1047080, at *4–5 (S.D.N.Y. Mar. 10, 2016) (affirming ALJ's decision not to give controlling weight to treating physicians' opinions in light of "inconsistencies between the[ir] treatment notes . . . and the[ir] findings," the plaintiff's testimony, and "the examination reports from the consulting physicians" (quotation marks and original alterations omitted)); *Shaffer v. Colvin*, No. 14-CV-745, 2015 WL 9307349, at *3 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ "properly applied the treating physician rule" in rejecting a treating physician's opinion that "was inconsistent with [the physician's] own treatment notes"); *Montaldo v. Astrue*, No. 10-CV-6163, 2012 WL 893186, at *15 (S.D.N.Y. Mar. 15, 2012) (holding that the ALJ offered "good reasons" not to give treating physician's opinion controlling weight, including inconsistencies with his analysis and that of another physician).

## II. Conclusion

For the foregoing reasons, the Court grants the Commissioner's Motion for Judgment on the Pleadings and denies Plaintiff's Cross-Motion for Judgment on the Pleadings. The decision of the Commissioner is affirmed. The Clerk of the Court is respectfully directed to terminate the pending motions, (Dkt. Nos. 10, 14), enter judgment for the Commissioner, mail a copy of this Order to Plaintiff, and close this case.

SO ORDERED.

Dated:    February **13**, 2019
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22